**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

DAVID M. MILELLI,

          Plaintiff,

    v.

COLLINGSWOOD BOARD OF
EDUCATION; AL HIRD; et al.,

          Defendants.

Civil No. 16-963(RMB/JS)

**OPINION**

**BUMB, United States District Judge:**

This matter comes before the Court upon the filing of a
motion for summary judgment [Dkt. No. 37] by Defendants the
Collingswood Board of Education ("Collingswood" or the "Board")
and Al Hird ("Hird", and collectively with Collingswood, the
"Defendants") seeking the dismissal of this matter in its
entirety, and a cross-motion for partial summary judgment by
Plaintiff David Milelli ("Plaintiff") [Dkt. No. 40] with respect
to Count Three of the Complaint, alleging interference with
entitlements as guaranteed pursuant to the Family and Medical
Leave Act of 1993, 29 U.S.C. §§2601, et seq. For the following
reasons, Defendants' motion is DENIED, in part, and GRANTED, in
part, and Plaintiff's motion is DENIED.

## I. Background

This dispute arises from Plaintiff David Milelli's termination from the Collingswood Board of Education for allegedly discriminatory reasons.

Plaintiff was hired by Collingswood as a plumber in November 2007. (Pl.'s St. of Facts ¶ 1). During Plaintiff's employment with Collingswood, Defendant Hird was the Supervisor of the Buildings and Grounds Department for the Board, and he was Plaintiff's direct supervisor. (Def.'s St. of Facts at ¶ 3). At all times relevant to this suit, Scott Oswald was the Superintendent of the Board, and Bethann Coleman served as the Board's Business Administrator. (Id. at ¶4-5).

Over the course of Plaintiff's employment with the Board, he received yearly performance reviews. The reviews of Plaintiff's work were consistently positive, but beginning in 2011, Plaintiff's reviews indicated that his superiors were concerned with his absences and tardiness. (See Def.'s St. of Facts Ex. K-O, Q). In 2015, Plaintiff was late for work on several occasions and left work early on others.[1] (See Def.'s St. of Facts Ex. P). This led Hird to dock Plaintiff's pay a "handful" of times. (Deposition of Al Hird "Hird Dep." T68:15-T69:9). When this approach did not improve Plaintiff's

---

[1] At some point during his tenure with Collingswood, Plaintiff engaged in a conversation with Hird about taking leave to care for his ailing wife. (Def.'s St. of Facts ¶ 24-30). Plaintiff declined to take unpaid FMLA leave at that point. (Deposition of David Milelli "Pl. Dep." at T45:21-46:3).

timeliness, Hird and Plaintiff implemented a system whereby Hird

kept a running tabulation of Plaintiff's hours and Plaintiff

either arrived early or worked late to make up for any

deficiencies. (Id.; Def.'s St. of Facts Ex. S).

Beginning in late October 2015, Plaintiff missed several

days of work, ultimately resulting in his termination.

Plaintiff: called out sick on October 27, 2015; took a personal

day on October 28, 2015; called out sick on October 29, 2015;

and took a vacation day on October 30, 2015.[2] (Def.'s St. of

Facts ¶ 55; Ex. S). On the afternoon of November 2, 2015,

Plaintiff's wife sent Hird a text message informing him that

Plaintiff

> ha[d] not been well and . . . [was] suddenly
> experiencing chest pressure and dizziness. We are on
> our way to the doctors where they said they would see
> him now. It has been a nightmare for all of us and I
> appreciate your understanding throughout all of this.

(Def.'s St. of Facts Ex. V). The following day, Plaintiff's wife

sent Hird another text message informing him that "the Doctor

has told Dave to be out for a week," and that "he has a follow

up doctor's appointment on Monday" and "more testing this week."

(Id. at Ex. W). Hird responded by asking if the doctors had

---

[2] Between October 29, 2015 and November 1, 2015, Hird and
Plaintiff exchanged a series of text messages discussing the
possibility of Plaintiff working a later shift and finding an
alternative means of transportation. (Def.'s St. of Facts ¶ 56-
60).

"said what [Plaintiff] is having trouble with" and requesting
that Plaintiff's wife keep him "posted." (Id.)

On November 6, 2015, Hird sent Plaintiff a message
requesting that Plaintiff, "upon [his] return . . . hand in [a]
doctors [sic] note providing his [Doctor's] request for
[Plaintiff's] absence." (Id. Ex. X). On November 10, 2015,
Plaintiff's wife sent a message to Mike Sinesi ("Sinesi"),
Hird's assistant, informing him that "the doctor gave
[Plaintiff] another week." (Id. Ex. Y). Sinesi requested that
she fax him Plaintiff's doctor's notes, but she did not do so.
(Id.) On November 16, 2015, Plaintiff contacted Hird's office
indicating that he was seeing another doctor and would be out
for another week. (Hird Dep. T50:11-24). In response, Hird sent
Plaintiff a message again requesting a doctor's note.

On November 19, 2015, Hird recommended Plaintiff's
termination to Bethann Coleman, and he sent Plaintiff a text
message providing that "due to your lack of communication with
my recommendation to contact me I am recommending to Dr. Oswald
your dismissal from employment." (Id. T51:21-52:5; Ex. Z).
Plaintiff responded in an email to Sinesi the next day,
attaching a letter addressed to Hird and notes from two doctors
purporting to excuse Plaintiff from work for the period from

October 28 to November 30 for "illness/injury."[3] (Def.'s St. of
Facts Ex. AA, BB). Hird sent Plaintiff another message
scheduling a meeting for November 23, 2015 in Coleman's office
to discuss Plaintiff's "employment status." (Pl.'s St. Facts Ex.
13). Plaintiff unsuccessfully attempted to reschedule that
meeting. On November 24, 2015, Plaintiff received a letter
notifying him that his employment had been terminated. (Pl.'s
St. of Facts 45; Ex. 19).

Plaintiff filed a Complaint in this Court on February 22,
2016. On March 28, 2017, Plaintiff filed a motion seeking leave
to amend the Complaint, which was granted on May 1, 2017. On May
2, 2017, Plaintiff filed the Amended Complaint, alleging (1)
disability discrimination in violation of the NJLAD; (2) failure
to provide reasonable accommodation in violation of the NJLAD;
(3) interference and wrongful discharge in violation of the
FMLA; and (4) perceived disability discrimination in violation
of the NJLAD. On May 5, 2017, Defendants filed an answer to the
Amended Complaint and on August 11, 2017 Defendants filed the
currently pending motion for summary judgment. On September 5,
2017, Plaintiff filed his opposition to Defendants' motion,
including a cross-motion for partial summary judgment on the
issue of interference and wrongful discharge under the FMLA.

---

[3] Plaintiff testified at his deposition that he was diagnosed
with anxiety and depression. (Pl.'s Dep. at 75:3-5,76:10-11).

## II. Summary Judgment Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. Further, a court does not have to adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 373, 380 (2007).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" <u>Anderson</u>, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

### III. Analysis

#### A. <u>FMLA Claims</u>

Plaintiff has alleged that the Defendants violated the FMLA by (1) interfering with his FMLA rights and (2) discharging him in retaliation for exercising those rights. Specifically, Plaintiff claims that Defendants "failed to advise" him "of his right to take a protected medical leave under the FMLA" and that "[d]espite repeated attempts to protect his employment, Plaintiff was terminated in retaliation for needing medical leave." (Am. Compl. ¶ 66, 69). Defendants seek the dismissal of these claims, arguing that (1) Plaintiff did not adequately notify Defendants that he was suffering from a serious medical condition; (2) even if a technical violation of the FMLA occurred, Plaintiff cannot establish that he was prejudiced; and (3) Plaintiff, as a matter of law, cannot establish, that he was terminated in retaliation for exercising his FMLA rights. Plaintiff cross-moves for summary judgment on his FMLA

interference claim, arguing that the record establishes
conclusively that he was improperly deprived of his FMLA rights.

   *i.   FMLA Interference*

The FMLA declares it "unlawful for any employer to
interfere with, restrain, or deny the exercise of or the attempt
to exercise, any right provided" in the FMLA. 29 U.S.C. §
2615(a)(1). To assert an interference claim, Plaintiff must show
that he was entitled to benefits under the FMLA and that he was
denied them. Callison v. Phila, 430 F.3d 117, 119 (3d Cir. 2005)
(citing 29 U.S.C. §§ 2612(a), 2614(a)). Moreover, Plaintiff must
establish that this denial prejudiced him. Scofienza v. Verizon
Pennsylvania, Inc., 307 Fed. Appx. 619, 621 (3d Cir. 2008)
(quoting Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89
(2002)).[4] "Prejudice occurs when the employer's failure to advise
the plaintiff of [his] FMLA rights render[s] [him] unable to
exercise the right to leave in a meaningful way, thereby causing
injury." Lupyan v. Corinthian Colleges Inc., 761 F.3d 314, 318-
19 (3d Cir. 2014) (internal quotations and modifications
omitted) (citing Ragsdale, 535 U.S. at 89; Conoshenti v. Pub.
Serv. Elec. & Gas Co., 364 F.3d 135, 143 (3d Cir. 2004)). In

---

[4] "An interference action is not about discrimination, it is only
about whether the employer provided the employee with the
entitlements guaranteed by the FMLA." Id. at 120. As such, the
familiar McDonnell-Douglas burden-shifting analysis used in
employment discrimination matters is not applicable. Sommer v.
The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006).

sum, "mere technical FMLA violations are not actionable." <u>Bravo</u>
<u>v. Union Cty.</u>, 2013 WL 2285780, at *9 (D.N.J. May 23, 2013)
(citing <u>Ragsdale</u>, 535 U.S. at 89).

In order to invoke his rights under the FMLA, Plaintiff was
required to provide adequate notice to Collingswood about his
need to take leave. 29 U.S.C. § 2612(e)(2). In doing so,
however, Plaintiff was not required to "expressly assert rights
under the FMLA or even mention the FMLA." 29 C.F.R. §
825.303(b). When the need for FMLA leave arises from
unforeseeable circumstances, the employee's obligation is to
"provide sufficient information for an employer to reasonably
determine whether the FMLA may apply to the leave request." <u>Id.</u>
This is not a formalistic or stringent standard. <u>Sarnowski v.</u>
<u>Air Brooke Limousine, Inc.</u>, 510 F.3d 398, 402 (3d Cir. 2007).
"[W]here the employer does not have sufficient information about
the reason for an employee's use of leave, the employer should
inquire further of the employee . . . to ascertain whether leave
is potentially FMLA-qualifying." 29 C.F.R. § 825.301(a). The
"'critical test' is not whether the employee gave every
necessary detail to determine if the FMLA applies, but 'how the
information conveyed to the employer is reasonably
interpreted.'" <u>Lichtenstein v. Univ. of Pittsburgh Med. Ctr.</u>,
691 F.3d 294, 303 (3d Cir. 2012).

Defendants argue that Plaintiff failed to notify Collingswood of his need for FMLA leave. Plaintiff, in response, has pointed to multiple communications with the Board. The evidence here is sufficient to establish a genuine dispute as to whether Plaintiff gave Collingswood adequate notice. Plaintiff's wife sent Hird a text message on November 2, 2015 advising him that Plaintiff "ha[d] not been well and . . . [was] suddenly experiencing chest pressure and dizziness." A day later, Plaintiff's wife sent Hird another text message advising him that "the Doctor has told Dave to be out for a week," and that "he has a follow up doctor's appointment on Monday" and "more testing this week." On November 10, 2015, Plaintiff's wife sent another message to Sinesi informing him that "the doctor gave [Plaintiff] another week." Finally, on November 16, 2015, Plaintiff contacted Hird's office indicating that he was seeing another doctor and would be out for another week.

Although Plaintiff's, and his wife's, statements were vague and did not expressly mention FMLA leave, chest pressure and dizziness can be signs of a serious medical issue (as acknowledged by Hird), and the interpretation of these communications—particularly in light of Plaintiff's pre-termination submission of doctors' notes—is a factual question not appropriately resolved at summary judgment. See Lichtenstein, 691 F.3d at 303 ("How the employee's notice is

reasonably interpreted is generally a question of fact, not law."). Likewise, were Plaintiff's notice sufficient, how Hird's responses to Plaintiff's wife should reasonably have been interpreted is an issue of fact.

Moreover, whether Plaintiff was prejudiced by any failure on the part of Collingswood is also genuinely at issue based on the evidence presented. Defendants argue that Plaintiff violated Board policy and his union contract by failing to provide sufficiently prompt proof of his illness. When viewed in the light most favorable to Plaintiff, the non-movant, and granting Plaintiff all reasonable inferences, as this Court must, the evidence does not establish that Plaintiff would have been terminated if not for his purportedly protected absences. Defendants refer to Plaintiff's "job abandonment" as their reason—or at least a reason—for terminating Plaintiff, and this "job abandonment" directly coincides with the period of possible FMLA entitlement in question. Accordingly, both parties' motions for summary judgment on this issue are denied. While Plaintiff has presented sufficient evidence to narrowly survive summary judgment, if a jury decides—as a jury well could on this record— that his notice was insufficient, or that Defendants sufficiently inquired about the nature of Plaintiff's ailment and Plaintiff insufficiently responded, his FMLA claims will necessarily fail.

*ii.  FMLA Retaliation/Wrongful Discharge*

To succeed on an FMLA retaliation claim, a plaintiff must establish that: (1) he exercised his rights under the FMLA; (2) there was an adverse employment action; and (3) a causal connection exists between his protected activity and termination. See Conoshenti v. Pub. Serv. Elect. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004). If the plaintiff meets the prima facie burden, a rebuttable presumption of unlawful retaliation arises and the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the plaintiff's termination. If the defendant then satisfies its burden, the burden reverts to the plaintiff to show that the proffered reason for the termination was a pretext for retaliation. See Id.

As Plaintiff's termination clearly satisfied the second element of the prima facie case, only the first and third elements are at issue. With regard to the first element, whether Plaintiff exercised his rights under the FMLA—and particularly whether Plaintiff gave Defendants sufficient notice—is genuinely disputed by the parties, and is a fact question for a jury, as set forth above. As to the third element, Defendant argues that the causal link between Plaintiff's purportedly FMLA protected activity and his termination was broken by an intervening event: Plaintiff's "job abandonment." Whether Plaintiff "abandoned" his

12

position, however, is disputed. Plaintiff communicated with Defendants on multiple occasions while he was absent from work during October and November 2015. The effectiveness of such communications, and their reasonable interpretation, is a question for the jury.[5] While Defendants may argue at the second stage of the burden shifting analysis that they believed Plaintiff had abandoned his job, the Court will not find, at this juncture, that the causal link was broken. Thus, Plaintiff has, for the purposes of summary judgment, satisfied his prima facie case. The Court notes, however, that should a jury find that Plaintiff's notice was insufficient, his retaliation claim will be unsuccessful at the prima facie stage.

Accordingly, Defendants have the burden of articulating a legitimate reason for Plaintiff's termination. Defendants' burden is one of production, not proof, and they have articulated at least two reasons for Plaintiff's termination: (1) persistent issues with excessive absences and tardiness, and (2) "job abandonment." Thus, in order to survive summary judgment Plaintiff must point to some evidence that would allow "a reasonable factfinder to infer that" retaliation "was the

---

[5] As is discussed above, whether these communications entitled Plaintiff to leave or triggered some obligation on the part of Defendants is a disputed issue. In light of its finding that Plaintiff is entitled to a jury determination on whether he provided sufficient notice of the need for FMLA leave, this Court will not simultaneously find as a matter of law that Plaintiff abandoned his position.

more likely motivating factor . . . or that the employer's proffered reason was 'a post hoc fabrication.'" Constant v. Mellon Fin. Corp., 247 F. App'x 332, 337 (3d Cir. 2007) (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)) (internal citation omitted). Granting all inferences to Plaintiff, Plaintiff has pointed to sufficiently inconsistent reasons for his termination that a reasonable jury could believe that excessive absences and tardiness were not the real reasons for Plaintiff's termination and that he was terminated for taking leave. Of course, whether such leave was in fact protected is an open question, and if a jury finds that it was not, Plaintiff's case will not even reach the pretext stage. At this juncture, however, Defendants' motion for summary judgment on Plaintiff's FMLA retaliation claim is denied.

B. NJLAD Claims

Defendants seek the dismissal of Plaintiff's NJLAD discrimination, perceived disability discrimination, and failure to accommodate claims, along with Plaintiff's claim to entitlement of punitive damages under the NJLAD.

*i. Discriminatory Discharge*

The NJLAD prohibits employment discrimination on the basis of disability or perceived disability. To succeed on a discriminatory discharge claim under the NJLAD, Plaintiff must "show that the prohibited consideration . . . played a role in

14

the decision making process and that it had a determinative influence on the outcome of that process. Bergen Commer. Bank v. Sisler, 157 N.J. 188, 207 (1999). Discriminatory discharge claims under the NJLAD are analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Joseph v. New Jersey Transit Rail Operations Inc., 586 Fed. Appx. 890, 892 (3d Cir. 2014) (citing Viscik v. Fowler Equip. Co., 173 N.J. 1, 13–14 (2002)); Battaglia v. United Parcel Servs., Inc., 214 N.J. 518, 546 (2013) ("All LAD claims are evaluated in accordance with the United States Supreme Court's burden-shifting mechanism.").

Under this burden-shifting framework, a plaintiff must first establish a prima facie case of discrimination. Tourtellotte v. Eli Lilly & Co., 636 Fed. Appx. 831, 848 (3d Cir. 2016) (citing Victor v. State, 203 N.J. 383, 408–09 (2010)). After a plaintiff demonstrates a prima facie case of discriminatory discharge, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. Id. at 842. "Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Terry v. Borough, 660 Fed. Appx. 160, 163 (3d Cir. 2016) (quoting Jones

v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999)).

In the context of a summary judgment motion, if Defendants meet their burden of coming forward with legitimate nondiscriminatory reasons for Plaintiff's termination, Plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Tourtellotte, 636 Fed. Appx. at 842 (citing Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006)).

To establish a prima facie case of discriminatory discharge due to a disability or perceived disability in violation of the NJLAD, a plaintiff must establish: "(1) that he is a member of a protected class [i.e. that he was disabled or perceived to be disabled]; (2) that he was otherwise qualified and performing the essential functions of the job; (3) that he was terminated; and (4) that the employer thereafter sought similarly qualified individuals for the job who were not members of his protected class." Joseph, 586 Fed. Appx. at 892 (citing Victor, 203 N.J. at 409); Grande v. Saint Clare's Health Sys., 230 N.J. 1, 18, 164 A.3d 1030, 1039 (2017)("As to the first prong of the prima

facie case, an employee who is perceived to have a disability is
protected just as someone who actually has a disability.").

Defendants argue that Plaintiff cannot establish a prima
facie case on either an actual or perceived disability theory
because (1) he never conveyed his "disability" to the Board, and
there is no evidence in the record that Defendants were aware of
any disability from which Plaintiff was suffering; (2) Plaintiff
cannot establish that Defendants' "hypothesis" that he may be
seeking addiction treatment played any role in his termination,
as opposed to simply serving as conjecture as to the reason for
his lack of responsiveness; and (3) he cannot establish that he
was "performing the essential functions of the job" due to his
absences and tardiness, about which he was counseled on multiple
occasions. Defendants' first two arguments seemingly attack the
first prong of the prima facie case and their third argument
attacks the second prong.

The NJLAD is a remedial statute "deserving of a liberal
construction," and the statutory definition a disability is very
broad in scope. See Clowes v. Terminix Intern., Inc., 109 N.J.
575, 538 A.2d 794, 802 (1988). New Jersey courts interpreting
the statute have repeatedly emphasized that the NJLAD's
definition of "disability" is not restricted to "severe" or
"immutable" disabilities. Fitzgerald v. Shore Mem'l Hosp., 92 F.
Supp. 3d 214, 236 (D.N.J. 2015)(citing Olson v. Gen. Elec.

Astrospace, 966 F. Supp. 312, 315 (D.N.J. 1997); Andersen v. Exxon Co., 89 N.J. 483, 446 A.2d 486 (1982)). Plaintiff has provided testimony tending to suggest that he was suffering from anxiety and depression. (Pl.'s Dep. 75:3-5-76:10-11). Defendants do not dispute that such ailments could qualify as disabilities under the NJLAD, but dispute whether they were aware that Plaintiff was suffering from them. N.J.S.A. 10:5-5(q) broadly defines "disability" to include any "physical or sensory disability ... which is caused by . . . illness . . . which prevents the normal exercise of any bodily . . . function." Whether Plaintiff's, and his wife's, communications were sufficient to notify Defendants that Plaintiff was "disabled" under this broad definition is an issue of fact which the Court will not decide at this juncture. Moreover, Plaintiff has pointed to sufficient evidence to—granting Plaintiff all reasonable inferences—genuinely dispute whether Coleman and Hird, who took part in the decision to terminate Plaintiff, were operating under the assumption that Plaintiff was in treatment for addiction, which could be construed as a disability. (see Pl.'s St. of Facts ¶ 35; Coleman Dep. at 11:20-12:14-18); Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 89, 783 A.2d 731, 738 (App. Div. 2001).

As for the second prong, "[a]ll that is necessary is that the plaintiff produce evidence showing that []he was actually

performing the job prior to termination." <u>Zive v. Stanley
Roberts, Inc.</u>, 182 N.J. 436, 454, 867 A.2d 1133 (2005).
Plaintiff received at least generally positive reviews of his
work throughout his time with the Board. However, it is also
undisputed that Plaintiff received several comments about his
tardiness and absences. Moreover, it has been established that
Plaintiff missed approximately one month of work in November,
2015—although it is also disputed whether this absence was FMLA
protected. Whether such history of absence was sufficiently
"chronic and excessive" to preclude Plaintiff from establishing
that he was actually performing his job at the time he was
terminated, however, is an issue of fact that the Court will not
decide on summary judgment. <u>See</u> <u>Grande</u>, 164 A.3d at 1044.

As discussed above, Defendant has proffered "job
abandonment" and a history of excessive absences and tardiness
as legitimate reasons for Plaintiff's termination and has met
its burden and rebutted the presumption of discrimination. Thus,
Plaintiff must establish pretext. As with his FMLA retaliation
claim, the Court finds that Plaintiff has, albeit narrowly,
identified enough record evidence to call into question whether
he was terminated for "job abandonment" or for seeking temporary
leave for a disability.

*ii.  Failure to Accommodate*

Under the NJLAD, an employer must make reasonable
accommodations "to the limitations of an employee or applicant
who is a person with a disability, unless the employer can
demonstrate that the accommodation would impose an undue
hardship." 13 N.J.A.C. § 13-2.5. To prevail on a failure to
accommodate claim, a plaintiff must first present the prima
facie elements required in any disability discrimination claim.
In addition, the Plaintiff must show that (1) his employer knew
of his disability; (2) Plaintiff requested accommodations or
assistance for his disability; (3) the employer made no good
faith effort to assist; and (4) that Plaintiff could have been
reasonably accommodated but for the employer's lack of good
faith. Fitzgerald, 92 F. Supp. 3d 214, 237 (D.N.J. 2015)(citing
Victor, 952 A.2d at 504; Armstrong v. Burdette Tomlin Mem.
Hosp., 438 F.3d 240, 246 (3d Cir. 2006); Linton v. L'Oreal
USA, 2009 WL 838766, at *3 (D.N.J. Mar. 27, 2009)). Once a
request for accommodation is made, both parties have a duty to
assist in the search for an appropriate reasonable
accommodation. Id. (citation omitted).

"New Jersey law places the duty on the employee to initiate
a request for an accommodation. Although there is no specific
formula and the request need not formally invoke the magic words
'reasonable accommodation,' the plaintiff must 'nonetheless make
clear that the employee wants assistance for his or her

disability.'" Id. at 238 (quoting Taylor v. Phoenixville Sch.
Dist., 184 F.3d 296, 313 (3d Cir.1999). Here, Plaintiff has
offered no proof that he requested any accommodation from
Defendants. Rather, the undisputed record establishes that
Plaintiff's wife notified Defendants that Plaintiff was going to
be absent from work, and then Plaintiff sought to be excused for
those absences by submitting doctors' notes. "The purpose of the
physician[]s['] note[s provided by Plaintiff] was not to notify
h[is] employer that []he could no longer perform h[is] job and
to request a modification of h[is] duties; instead, it can only
be interpreted as seeking an excused absence for" work that
Plaintiff already missed. Id.

   The Court finds that neither the doctors' notes nor
Plaintiff's or his wife's communications make clear that
Plaintiff wanted assistance for his disability. See Id. (citing
Linton v. L'Oreal USA, 2009 WL 838766 (D.N.J. Mar. 27, 2009);
Boles v. Wal-Mart Stores, Inc., 2014 WL 1266216 (D.N.J. Mar. 26,
2014)). Because Plaintiff has pointed to nothing else in the
record to suggest that he requested an accommodation, the Court
will grant summary judgment on Defendants' failure to
accommodate claim.

                    *iii. Punitive Damages*

   Finally, Defendants seek the dismissal of Plaintiff's
request for punitive damages. To recover punitive damages under

                            21

the NJLAD, Plaintiff must establish: (1) "actual participation in or willful indifference to the wrongful conduct on the part of upper management" and (2) "proof that the offending conduct [is] 'especially egregious.'" Cavuoti v. New Jersey Transit Corp., 161 N.J. 107, 113 (1999) (quoting Rendine v. Pantzer, 141 N.J. 292, 313 (1995)).

Defendants do not appear to dispute that members of Colingswood's upper management actually participated in Plaintiff's termination. Rather, Defendants argue that there is no evidence of any especially egregious conduct on the part of the Board or any members of its upper management. The issue of punitive damages is generally a question of fact for the jury. Elmiry v. Wachovia Corp., 2007 WL 4117260, at *16 (D.N.J. Nov. 16, 2007) (quoting Fisher v. Volz, 496 F.2d 333, 347 (3d Cir. 1974)). Although it does not appear to the Court that Plaintiff has made a strong showing of entitlement to punitive damages, the Court will deny summary judgment on this issue without prejudice. Defendants may revisit this issue at the appropriate time at trial, which may be bifurcated, if they so choose.

### IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is denied, in part, and granted, in part, and Plaintiff's motion for partial summary judgment is denied. An accompanying Order shall issue on this date.

_s/ Renee Marie Bumb_
RENÉE MARIE BUMB
United States District Judge

DATED: March 29, 2018